# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, | MEMORANDUM DECISION AND ORDER |
| **Plaintiff,** | |
| v. | **Case No. 2:10cv1027** |
| OMG AMERICAS, INC., | **District Judge Tena Campbell** |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court are the following motions: (1) Commonwealth Land Title Insurance Company's ("Commonwealth") motion to compel production of documents;[2] (2) OMG Americas, Inc.'s ("OMG") motion to withdraw its jury demand;[3] and (3) OMG's motion for a protective order staying depositions and discovery.[4]  The court has carefully reviewed the memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court

---

[1] *See* docket no. 52.

[2] *See* docket no. 71.

[3] *See* docket no. 74.

[4] *See* docket no. 79.

elects to determine the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

## BACKGROUND

Commonwealth issued to OMG a $3,000,000 title insurance policy ("Policy") in 1995 that insured OMG's leasehold interest ("Lease") on property located on the Shivwits Band of Paiute Indians reservation.  The Lease allowed OMG to use the land to process and store mined ores, mineral concentrates, and metal byproducts, and to generate and process hazardous waste. In 2000, the Bureau of Indian Affairs declared the Lease void ab initio, and OMG submitted a claim to Commonwealth for defense and indemnity under the Policy.  The parties attempted to resolve OMG's claim without litigation.  OMG retained an expert to analyze the value of the property when the Lease was voided.  On February 24, 2010, OMG provided to Commonwealth a copy of the expert's estimate of value ("Expert Report") as of August 10, 2000.

On October 18, 2010, Commonwealth filed this action seeking a declaratory judgment that the Policy did not cover OMG's claim.  OMG counterclaimed seeking a declaratory judgment that its losses were covered by the Policy, as well as an award of compensatory damages for Commonwealth's breach of the Policy.

The case was bifurcated into two stages: liability and damages.  On October 12, 2012, Judge Campbell granted OMG's motion for partial summary judgment and denied Commonwealth's motion for summary judgment ("October 12 Order").  The court determined that Commonwealth has an indemnity obligation for actual damages sustained under the Policy. The court's October 12 Order commenced the damages phase of this case and opened discovery

into determining the amount of OMG's damages that are covered by Commonwealth's indemnification obligation under the Policy.

OMG claims it is entitled to damages in the amount of the Policy limit of $3,000,000 for the complete loss of title, as well as compensatory damages from Commonwealth's breach of the Policy. Commonwealth asserts that there are no damages compensable under the plain language of the Policy because the title defect resulted in a net gain to OMG.

## DISCUSSION

### I. Commonwealth's Motion to Compel

Commonwealth seeks OMG's financial documents regarding the mining business and operations on the property, as well as documents related to environmental reclamation problems at the mining facility and enforcement actions by the Environmental Protection Agency ("EPA"). OMG objects to the discovery requests on the following grounds: (1) the requested documents are not relevant to the issue of damages under the Policy, (2) Commonwealth already possesses much of the discovery it seeks, and (3) it would be unduly burdensome for OMG to produce the requested documents.

The following general standards govern civil discovery in federal court. "The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted). The general scope of discovery is governed by rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is

3

relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant" to a party's claim or defense.  *Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

The court must also consider whether "the burden or expense of the proposed discovery outweighs its likely benefits…"  Fed. R. Civ. P. 26(b)(2)(C)(iii).  If the court finds the burden or expense outweighs the likely benefit, "the court must limit the frequency or extent of discovery." *Id.*  The court should also consider the "needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *Id.*  The court will address the discovery requests and related objections in turn.

In its motion to compel, Commonwealth seeks the following requested discovery: (1) "all documents in any way related to [OMG's] business and operations on the [property] including, . . . profit and loss statements, financial statements, balance sheets and income statements for the periods 1995 through 2006";[5] (2) "any and all documents reflecting the calculations, audits, forecasts, financial projections and reports that otherwise support[] OMG's November 2002 press release [stating that removing operations from the property would] improve 2003 operating

---

[5] Docket no. 71 at 7.

profit and cash flows by approximately $12 million";[6] (3) "all projections and analyses of business operations at the [property] for the periods 1995 through 2006";[7] (4) "all documents reflecting payments made by OMG to the EPA relating to the [property]";[8] (5) "all documents reflecting costs related to the reclamation or cleanup activities";[9] and (6) "all documents in any way related to OMG's efforts to mitigate losses from business operations on the [property]."[10]

The parties have a disparate view of how the Lease should be valued for purposes of the damage calculation. Commonwealth asserts that it seeks "information related to the income capitalization approach and the financial feasibility of operations on a leasehold on the premises."[11] Commonwealth argues that the requested documents will demonstrate that the Lease had no market value because there was no feasible and legal use for the property and that OMG actually profited from losing the Lease. OMG asserts that the method used in its Expert Report is the proper method for valuing the Lease in order to calculate its damages under the Policy. OMG states that its Expert Report expressly noted that the income capitalization valuation theory, which is based on anticipated revenue and expenses, could not be used to value the Lease. OMG argues that Commonwealth confuses the value of property with the

---

[6] *Id.* at 9.

[7] *Id.* at 8.

[8] *Id.* at 10.

[9] *Id.* at 11.

[10] *Id.*

[11] *Id.* at 7.

profitability of a business that operates on that property and that, contrary to Commonwealth's assertion, the profitability of OMG's mining operations has no relevance to the value of the property on which it sits.

While the court understands OMG's relevance objections regarding Commonwealth's asserted valuation method(s), it is not apparent from the briefs or cited case law what method should or will be utilized at trial to value the Lease and calculate OMG's damages under the Policy.  Commonwealth has already been held liable for damages under the Policy.  Therefore, the court believes that Commonwealth should have the opportunity to present its opinion of the market value using the requested financial documents.

Therefore, given that relevance is broadly construed under the discovery rules and out of an abundance of fairness to Commonwealth, the court orders OMG to respond fully to Commonwealth's discovery requests regarding the financial documents.  However, OMG need only respond to Commonwealth's modified requests as described in its memoranda.[12]  In addition, OMG is not required to produce documents it has already turned over to Commonwealth or generate any new documents that do not already exist in the normal course of business.  Further, if the production request requires documents that OMG does not have or that do not exist, it need only provide a signed affidavit to that effect.

Whether the documents, or any expert report created from them, will be admissible at trial is not before this court.  Relevancy does not hinge on whether the information is admissible

------

[12] For instance, Commonwealth indicated that it "offered to limit the scope of these [financial] requests to summary year-end reports of operations."  Docket no. 71 at 8.

at the trial, as long as it appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The court concludes that Commonwealth's requests meet this requirement.

OMG also asserts that the documents related to the environmental contamination problems at the mining facility and the payments it made to the EPA are not relevant. The court disagrees. While Judge Campbell ruled that Commonwealth's arguments regarding environmental contamination were not relevant to determine *liability*, she made no such ruling regarding *damages*. Accordingly, this court concludes that the requested discovery regarding contamination and reclamation are relevant for purposes of the damage portion of this case. Whether those documents will be admissible at trial is not before this court. OMG can obviously object to the admission of that evidence through appropriate motions in limine prior to trial.

Furthermore, the court is not persuaded by OMG's assertions regarding undue burden. OMG has not provided sufficient detail to demonstrate that producing the requested discovery would be overly burdensome. While it may be difficult or troublesome to locate and provide the requested documents, OMG has not established that the burden is unduly difficult or cost prohibitive.

Based on the foregoing, Commonwealth's motion to compel is **GRANTED**.

## II.  OMG's Motion to Withdraw Jury Demand

OMG moves this court to permit it to withdraw its demand for a jury trial. In its answer and counterclaim, OMG requested a jury trial. Commonwealth originally objected to OMG's

jury demand, as set forth in the scheduling order.[13]  Commonwealth asserts that after issuance of

the October 12 Order, it requested that a jury trial be scheduled during a joint telephone call to

the court's scheduling clerk.  OMG contends that Commonwealth requested a jury trial only

after learning that OMG intended to withdraw its jury demand.  After the instant motion was

filed, Commonwealth filed a notice of withdrawal of its objection to OMG's request for a jury

trial.[14]

Rule 38 of the Federal Rules of Civil Procedure provides that "[a] party waives a jury

trial unless its demand is properly served and filed.  A proper demand may be withdrawn only if

the parties consent."  Fed. R. Civ. P. 38(d).  Rule 39 states that once a party demands a jury trial

under rule 38, "the action must be designated on the docket as a jury action.  The trial on all

issues so demanded must be by jury unless . . . the parties or their attorneys file a stipulation to a

nonjury trial or so stipulate on the record."  Fed. R. Civ. P. 39(a)(1).

OMG properly and timely demanded a jury trial in its answer and counterclaim.  While

Commonwealth contested OMG's right to a jury trial at the outset of the case, thus waiving *its*

right to a jury trial, OMG's original demand for a jury trial remained.  OMG may only withdraw

its jury demand with Commonwealth's consent.  Notwithstanding Commonwealth's original

waiver/objection, OMG cannot now unilaterally withdraw that demand.  *See Zero Down Supply*

*Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, 282 F.R.D. 604, 607 (D. Utah 2012)

---

[13] *See* docket no. 20 at 5 ("A jury trial has been requested by OMG Americas.
Commonwealth contests the right to jury trial in the present action. This order does not
determine the issue.").

[14] *See* docket no. 76.

8

("[T]he plain language of Rule 38(d) suggests that one party may not unilaterally withdraw its request for a jury trial if the other party does not consent.  And nothing in the language of this rule implies that the non-consenting party loses its right to a jury trial simply because it is in default.").  Similarly, there is nothing in the language of the rule that allows a party to unilaterally withdraw its jury demand.  The court does not conclude that Commonwealth's objection to a jury trial during the attorney planning meeting excuses OMG from complying with the consent requirements of rules 38(d) and 39(a)(1).   Accordingly, OMG's motion to withdraw its jury demand is **DENIED**.

### III.  OMG's Motion for Protective Order

OMG moves this court for an order staying scheduled depositions until this court ruled on Commonwealth's motion to compel.  Commonwealth opposes OMG's motion for a protective order.  In light of the fact that the dates scheduled for the depositions have long since passed and the court has now ruled on Commonwealth's motion to compel, the court concludes that OMG's motion for a protective order is **MOOT**.

### CONCLUSION

Based on the foregoing, it is hereby ordered that:

(1)      Commonwealth's motion to compel[15] is **GRANTED**.

(2)      OMG's motion to withdraw its jury demand[16] is **DENIED**.

---

[15] *See* docket no. 71.

[16] *See* docket no. 74.

(3)     OMG's motion for a protective order[17] has been rendered **MOOT**.

Lastly, the parties are instructed to submit a proposed amended scheduling order to the court by October 18, 2013.  If the parties cannot stipulate to a proposed order, each party shall submit its proposed order to the court by that same date.

**IT IS SO ORDERED.**

DATED this 27th day of September, 2013.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[17] *See* docket no. 79.